PATRICK DONOGHUE *vs.* HOLYOKE STREET RAILWAY
COMPANY.

Hampden. September 20, 1923. — October 11, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, PIERCE, & CARROLL, JJ.

*Negligence,* Street railway, Of member of fire department, Motor vehicle, Contributory, Imputed. *Damages,* In tort. *Jury and Jurors.*

At the trial of an action of tort against a street railway company for personal injuries received by a permanent member of the fire department of a city when a motor fire truck, upon the running board of which he was riding, was run into by a car operated by the defendant, there was evidence tending to show that the defendant's car was running at the rate of from thirty

to thirty-five miles an hour, that no gong on it was sounded and that the collision occurred at intersecting streets; that immediately before the collision the truck carrying the plaintiff was running at the rate of four miles an hour, that the plaintiff was looking in the direction in which the truck was going and that he did not see the trolley car until just as the collision occurred and when the car was about one foot distant. *Held*, that the questions of negligence of the defendant's employees and of due care of the plaintiff were for the jury.

At the trial of the action above described, there was uncontradicted evidence that a lieutenant of the fire department was "in charge of this piece of apparatus, and the men upon it," and there was no evidence that the plaintiff relied solely on the care and vigilance of the lieutenant, of the driver, of the tillerman, or of any of them. *Held*, that·

(1) A request for a ruling, that it was necessary for the plaintiff to show that the driver, the tillerman and the lieutenant exercised due care, properly was refused;

(2) Requests for rulings predicated on possible findings, either that the plaintiff was engaged in a common enterprise with the other occupants of the car, so that their negligence or the negligence of any of them would be imputed to him, or that he relied solely on the care and vigilance of the lieutenant, of the driver and of the tillerman, or of any of them, with a like result, properly were refused.

At the trial of the action above described, it was proper to exclude evidence offered by the defendant to prove that the plaintiff was appointed to the city fire department under the civil service laws and was paid a weekly salary from the time he was injured until he returned to work after his injury and also that, under an ordinance of the city, a fireman, receiving permanent injuries while in the discharge of his duty, might, on the recommendation of the fire commissioners and the approval of the board of aldermen, be retired on a pension equal to one half of the maximum salary of a permanent fireman at the time of retirement, there being nothing in the offer indicating that the payments to the plaintiff during his disability were made as of right or that his injuries prevented him from performing useful services as a fireman in the future.

It is proper to deny a motion, made at the close of the evidence in an action of tort for personal injuries brought by a permanent member of the fire department of a city against a street railway company, that members of the jury who were residents and taxpayers of the city "be discharged from further service as jurors in this case, because of their interest in the question being tried in this case, to wit, as to whether the defendant's negligence was responsible for the collision, because the city can make claim for damages against this defendant growing out of the same collision, and dependent on the same question," the proper time to make such an objection being, under G. L. c. 234, § 31, before trial, at which time the defendant could have known of the places of residence of the members of the panel.

TORT for personal injuries received when the plaintiff, a permanent member of the Holyoke fire department, was upon a motor fire truck with which an electric street car of the defendant came into collision.    Writ dated July 19, 1918.

In the Superior Court, the action was tried before *Callahan,* J. Material evidence is described in the opinion. At the close of the evidence, the defendant moved that a verdict be ordered in its favor. The motion was denied.

The defendant also then moved " that the members of the jury, resident and taxpayers of the city of Holyoke, be discharged from further service as jurors in this case, because of their interest in the question being tried in this case, to wit, as to whether the defendant's negligence was responsible for the collision, because the city of Holyoke can make claim for damages against this defendant growing out of the same collision and dependent on the same question." The motion was denied.

The defendant then requested the judge to rule as follows:

" 1. If the plaintiff trusted the drivers of the fire truck to look out for him (the plaintiff,) he must show that Cavanaugh [the driver of the fire truck] exercised due care and that no negligence of Cavanaugh contributed in the slightest degree to the accident.

" 2. If the plaintiff trusted to the drivers of the truck the sole care and management of the truck and relied solely on the care and vigilance of said drivers, he must prove that said drivers were in the exercise of due care and that no negligence of said drivers contributed in the slightest degree to the accident.

" 3. If the plaintiff trusted Malcolm to look out for him (the plaintiff), he must show that Malcolm exercised due care, and that no negligence of Malcolm contributed in the slightest degree to the accident.

" 4. If the plaintiff relied solely on the care and vigilance of Lieutenant Malcolm, he must prove that Malcolm was in the exercise of due care and that no negligence of his contributed to the accident.

" 5. If the plaintiff trusted to the driver, Cavanaugh, and to Lieutenant Malcolm, and tillerman Buckley, the sole care and management of the truck on which he was riding and relied solely on their care and vigilance, he must prove that they were in the exercise of due care, and that no negligence of any of them contributed in the slightest degree to the accident.

" 6. On the question of Cavanaugh's due care, the burden is on the plaintiff to prove by a fair preponderance of all the evidence that Cavanaugh was in the exercise of due care, and that no negligence of his contributed to the accident.

" 7. On the question of Malcolm's due care the burden of proof is on the plaintiff to prove by a fair preponderance of the evidence that Malcolm was in the exercise of due care.

" 8. On the question of due care of Cavanaugh and Malcolm, the burden of proof is on the plaintiff to prove by a fair preponderance of the evidence that both Cavanaugh and Malcolm were in the exercise of due care and that [*sic*] negligence of either of them contributed to the accident."

" 18. On all the evidence the plaintiff was a member of the fire department of the city of Holyoke and as such was a public officer, at no time suspended or removed from such office; and therefore entitled, as a matter of right, to his salary as such officer from the city of Holyoke during all the time material to this case.

" 19. There is no evidence that the city of Holyoke did not pay the plaintiff his salary as a member of the fire department during all the time material to this case.

" 20. There is no presumption that the city of Holyoke has not paid the plaintiff his salary as a member of its fire department during all the time material to this case."

The requests were refused.

In the course of the charge on the question of damages, the judge instructed the jury as follows: " There is still a further item to consider, and that is the impairment of his [the plaintiff's] earning capacity; that is, the damage done by this accident to his power to earn a livelihood. In that connection I give you the following requests:

" On all the evidence the plaintiff cannot recover anything for loss of time, as alleged in his declaration.

" There is no evidence that the plaintiff lost any wages or salary because of the accident.

" The plaintiff cannot recover anything for lost salary.

" On all the evidence the plaintiff lost no wages or salary.

" The plaintiff can recover nothing for impairment of earning capacity based upon a loss of wages or salary.

" No damages can be based on a loss of wages or salary, for there is no evidence that the plaintiff has lost any wages or salary.

" I grant these requests, but in connection with them I also instruct you as follows: As to this item of damages which I am now discussing, you will recall that he is entitled to recover compensation for impairment of his earning capacity brought about by these injuries. In order to determine what a man's earning capacity is, sometimes evidence of his actual compensation for his services rendered his employers is admissible, and is almost always admitted. That determines the value of his earning capacity, — or may help to determine the value of his earning capacity, rather. The mere circumstances that he has not received his wages for a particular or given time is not conclusive upon the question of value of his earning capacity.

" In this case, for example, I instruct you that whether the city of Holyoke did or did not pay him is not a test for you. Whether they did or did not pay him for that eight months during which he was incapacitated is no test for you. You have the right to take into account the amount that he was receiving from the city of Holyoke as some evidence bearing upon the value of his earning capacity, and whether the city of Holyoke paid him or not during that time is no concern of this defendant. The defendant cannot avail itself of the act of the city of Holyoke here in excuse for — or as an excuse for relief from the consequence of its own wrongdoing, if it is guilty of any wrongdoing.

" So you will determine how far the earning capacity of this plaintiff was impaired at the time of the injury by reason of it. In determining that you have a right to take into account what he was at that time receiving in his occupation as some evidence enabling you to ascertain what the value of his earning capacity was. You will then determine how long he was out in consequence of the injury, and, having determined the value of his earning capacity, you will determine then how far it was impaired by the injury which he received. And in passing upon that you are not to take into account that the city of Holyoke did or did not pay him while he was out."

The jury found for the plaintiff in the sum of $3,750. The defendant alleged exceptions to the rulings as to evidence described in the opinion and " to that part of the charge in which the jury is instructed that the plaintiff can recover, notwithstanding the negligence of the persons in charge of the fire truck, to such portions of the charge as are inconsistent with its requests and the requests refused, and to that portion of the charge dealing with the measure of recovery of damages for impairment of earning capacity."

The case was submitted on briefs.

*W. H. Brooks, J. P. Kirby & D. H. Keedy,* for the defendant.

*J. R. Callahan, E. A. Lynch & H. J. Lacey,* for the plaintiff.

CARROLL, J. The plaintiff, a permanent member of the Holyoke fire department, while returning from a fire May 4, 1918, was injured by reason of a collision between the fire truck on which he was riding and a trolley car of the defendant. When the collision occurred the plaintiff, who was a ladder man, was standing on the running board. He testified that, as the truck turned into Main Street from Hamilton Street, it was moving at the rate of four miles an hour; that he heard a crash and started to climb to the top of the ladder; that the running board began to crack and he was pinned between the car and the truck; that immediately before the accident he was looking in the direction in which the truck was going, but did not see the trolley car until just as the collision occurred, and when the car was about one foot distant; that if he had seen anything he would have tried to warn the driver of the fire truck. The lieutenant in charge of the fire truck testified that if the plaintiff saw a trolley car, it was no part of his duty to give warning of its approach; but if the trolley car was dangerously near, "it would be part of his duty to give such warning." The verdict was for the plaintiff, and the defendant excepted.

The motion for a directed verdict was denied properly: the question of the defendant's negligence was for the jury. They could have found that the trolley car was running at the rate of from thirty to thirty-five miles an hour; that no

gong was sounded; and that the collision occurred at inter-
secting streets.   In these circumstances the general rule is
applicable that the issue of the defendant's negligence is a
question of fact for the jury.   *Daris* v. *Middlesex & Boston
Street Railway*, 241 Mass. 580, 582, and cases cited.

The jury could have found that the plaintiff was in the
exercise of due care.   He was standing on the running board
of the truck, where it was proper for him to stand in the
discharge of his duty.   He did not see the trolley car, he did
not know that a collision was imminent until he heard the
noise of the crash, and then he tried to avoid the danger.

The plaintiff and the other occupants of the truck were
not engaged in a joint enterprise so that each was respon-
sible for the conduct of all the participants.   The elements
necessary to establish a joint undertaking are lacking.
There was uncontradicted evidence that the lieutenant was
" in charge of this piece of apparatus, and the men upon it."
The principle that, if two or more persons participate in a
common or joint undertaking and one is injured by the
negligence of a third person, the contributing negligence of
a joint participant in the enterprise is to be imputed to the
injured person, has no application in the case at bar.   As
was said in *Barry* v. *Harding*, 244 Mass. 588, 592, 593 " the
evidence does not warrant a finding that the plaintiff had an
equal right with the driver in respect of the control of the
automobile; . . . it does not warrant a finding that he had
power to control the means, or an equal right to direct the
conduct of the undertaking."   *Skerry* v. *Rich*, 228 Mass.
462.   *McKernan* v. *Detroit Citizens' Railway*, 138 Mich. 519.
*Geary* v. *Metropolitan Street Railway*, 84 App. Div. (N. Y.)
514, affirmed 177 N. Y. 535.   See *Loftus* v. *Pelletier*, 223
Mass. 63.

The plaintiff did not trust his safety entirely to the care
of the driver, the lieutenant, or the tillerman.   The defend-
ant's request, in effect, that if the plaintiff relied solely on the
care and vigilance of the lieutenant, the driver and the
tillerman, or any of them, he could not recover if their negli-
gence contributed to the accident, was properly refused.
There was no evidence that the plaintiff relied entirely on

the care of these men.  He was looking out for his own
safety.  There was evidence that if he saw the " trolley car
dangerously near it would be part of his duty to give " warn-
ing to the driver; and the plaintiff admitted that if he had
known of the approach of the trolley car he would have tried
to warn the driver.  But there was no evidence that he saw
the car until the time of the collision, and he testified that he
did not see it until just before the crash.  Even if his evi-
dence were not believed by the jury, there was nothing
to support the defendant's assumption that the plaintiff
placed himself entirely in the care of the men in charge of the
apparatus.  He might safely trust the driver and tillerman
to manage the truck, and the lieutenant to direct its opera-
tions, while he was on the lookout for his own safety.  See
*Griffin* v. *Hustis*, 234 Mass. 95; *Fahy* v. *Director General of
Railroads*, 235 Mass. 510.

The defendant offered to prove that the plaintiff was a
member of the fire department of the city of Holyoke,
appointed under the civil service laws;  that " his salary
was $1,200, per year, which, on the twenty-sixth of July,
1918, was increased to $1,300 per year; "  that his salary
was paid in weekly instalments " during the time that he
was ill; "  and offered section 10, chapter 10 of the Revised
Ordinances of the city of Holyoke, showing that a fireman
receiving permanent injuries while in the discharge of his
duty, may, on the recommendation of the fire commissioners
and the approval of the board of aldermen, be retired on a
pension equal to one half the maximum salary of a perma-
nent fireman at the time of retirement.  This evidence was
excluded.  The jury were instructed that whether the city
of Holyoke did or did not pay the plaintiff " for that eight
months during which he was incapacitated is no test for
you. . . . The defendant cannot avail itself of the act of the
city of Holyoke . . . as an excuse for relief from the conse-
quence of its own wrongdoing, if it is guilty of any wrong-
doing."  They were further instructed that they were to de-
termine to what extent the plaintiff was incapacitated by
reason of the injury, and how far his earning capacity was
impaired; but they were not to take into account that the

city did or did not pay him while he was unable to work. This portion of the charge was excepted to by the defendant.

Incapacity to labor, or loss of earning power is an item of damage in an action for personal injuries. *Mahoney* v. *Boston Elevated Railway*, 221 Mass. 116. Wages or salary loss can be considered in assessing damages, but wages or salary as such are not recoverable. *Braithwaite* v. *Hall*, 168 Mass. 38. *Sibley* v. *Nason*, 196 Mass. 125, 131. *Mahoney* v. *Boston Elevated Railway, supra*. The defendant cannot show that the plaintiff's pay has been continued by his employer during his disability as a gratuity, in mitigation of damages. *Elmer* v. *Fessenden*, 154 Mass. 427. See *Gray* v. *Boston Elevated Railway*, 215 Mass. 143. *Batchelder* v. *Morgan*, 179 Ala. 339, 353; *Hayes* v. *Morris & Co.* 98 Conn. 603; *Nashville, Chattanooga & Saint Louis Railway* v. *Miller*, 120 Ga. 453. It has been held in some jurisdictions, that when a plaintiff has received wages as a matter of right during the time of his disability, this may be shown as tending to diminish the damages resulting from the loss of earning power. *Montgomery & Eufaula Railway* v. *Mallette*, 92 Ala. 209. *Travis* v. *Louisville & Nashville Railroad*, 183 Ala. 415. *Quigley* v. *Pennsylvania Railroad*, 210 Penn. St. 162.

There was nothing in the defendant's offer of proof, indicating that the payments to the plaintiff during his disability were made as of right. They may have been entirely discretionary, and while we must assume that they were made in accordance with the law, *Nevins* v. *City Council of Springfield*, 227 Mass. 538, 541, it does not follow that the plaintiff could demand that he be paid by the city during the time he was unable to perform his duty. *Malcolm* v. *Boston*, 173 Mass. 312. *Averell* v. *Newburyport*, 241 Mass. 333. See St. 1910, c. 261, granting authority to a city to indemnify a fireman for damages sustained in the discharge of his duty. If the city had authority to pay the plaintiff during his disability, and in its discretion to determine how much if any amount should be paid, the plaintiff could not as of right demand compensation. The plaintiff did not offer any direct evidence of the loss of earning capacity during his disability.

The defendant's offer was to the effect that his salary had been paid the plaintiff during this time and that he was appointed under the civil service law (see G. L. c. 31, § 43) which provides that the compensation of such employees shall not be lowered except as set out in the statute. This section of the statute did not deprive the city of the right to refuse compensation while the employee was incapacitated for service. As was said in *Malcolm* v. *Boston, supra*, at page 321, " The provision in regard to increasing or diminishing the pay manifestly refers to the salary which has been or may be established, and not to such reductions as may occur through fines or forfeitures established to preserve and promote the discipline and efficiency of the force." As there is nothing to show that the plaintiff had this right to demand compensation, there was no error in excluding the evidence offered, or in the ruling made, on this point. The evidence offered relating to the pension was excluded properly. It did not appear that the plaintiff suffered any permanent disability, or that the injuries prevented him from performing useful services as a fireman in the future. The defendant was not harmed by the exclusion of this evidence.

At the close of the evidence the defendant moved that the members of the jury, residents and taxpayers of the city of Holyoke, " be discharged from further service as jurors in this case, because of their interest in the question being tried in this case, to wit, as to whether the defendant's negligence was responsible for the collision, because the city of Holyoke can make claim for damages against this defendant growing out of the same collision, and dependent on the same question." There was no evidence showing that the city of Holyoke was interested in the controversy, or had made any claim on the defendant for damages caused by the collision. If members of the panel were residents of the city of Holyoke, the defendant could have known it, and this objection should have been made before the trial. G. L. c. 234, § 31.

*Exceptions overruled.*